IN THE TAX COURT OF THE
STATE OF OREGON

Mitchell J. OLEJKO
and Jill Wolcott

*v.*

DEPARTMENT OF REVENUE

(TC 4069)

Mitchell J. Olejko, attorney, Portland, represented Plaintiffs (taxpayers).

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented Defendant (department).

Decision for Defendant rendered July 25, 1997.

**CARL N. BYERS, Judge.**

Plaintiffs appeal from an assessment of additional personal income taxes for 1992. After an administrative hearing, Defendant determined that a payment to a nonresident partner from a partnership was a guaranteed payment, a portion of which was sourced in and therefore taxable by Oregon. Plaintiffs contend the payment is not taxable by Oregon because it was for services rendered in a nonpartner capacity and outside of Oregon. There is no dispute of material fact, and the matter has been submitted to the court on cross motions for summary judgment.

## FACTS

Mitchell J. Olejko (taxpayer) was a resident of Washington until March 31, 1992, when he established domicile in Oregon. While a Washington resident, he was a partner in a law partnership with offices in Washington and Oregon. An auditor for the Department of Revenue (department) determined that 18.7395 percent of the partnership's income was sourced in and, therefore, taxable by Oregon. There is no dispute regarding this apportionment factor.

Taxpayer interviewed for a position with an Oregon health care organization in November 1991 and again in January 1992. He was offered the position in early February 1992. On February 7, 1992, taxpayer notified the partnership's managing partner that he was resigning. A firm-wide notice of taxpayer's withdrawal as a partner was given on February 14, 1992. From February 14 to March 17, 1992, taxpayer performed services for the firm, all of which were performed in the state of Washington. Although the written partnership agreement contains provisions governing the withdrawal of a partner, taxpayer negotiated a specific withdrawal agreement with the managing partner. The agreement affirms that taxpayer's withdrawal "is governed by, and is in accordance with, the Restated Articles of Partnership." The Withdrawal Agreement, dated March 12, 1992, established the effective date of taxpayer's withdrawal as March 17, 1992.

The Withdrawal Agreement recites that taxpayer was paid his entire share of the 1991 partnership earnings. It

then states: "For 1992, Olejko shall be compensated in the amount of $87,500, all of which shall be paid by March 17, 1992." The Withdrawal Agreement also provided for payment of a retirement benefit in a lump sum and the refund of taxpayer's capital contribution, both of which were to be paid by March 17, 1992. Except for the payments mentioned and taxpayer's interest in the law firm's profit sharing plan in trust, taxpayer was to "have no right or claim upon the partnership, its assets, interest and income, or upon the partnership's deferred compensation plan or employee benefit plan (whether or not governed by ERISA)." The Withdrawal Agreement also provides that: all accounts receivable remain the property of the partnership, taxpayer releases the partnership from all claims, and liability insurance will be provided for acts occurring while taxpayer was a partner. Taxpayer also agrees to "assist and cooperate" in transferring responsibility for matters taxpayer worked on, including communicating with clients, billing for work in progress and accounts receivable, and assisting in the defense of claims against the firm.

## ISSUE

Was the payment of $87,500 made to taxpayer in a capacity other than as a partner?

## ANALYSIS

██ Generally, Oregon follows federal income tax laws. Therefore, partnerships are not taxed entities but are treated as conduits for income which is taxed to the partners individually. ORS 314.712.[1] The character of a partner's income is the same for state purposes as for federal purposes. ORS 314.714. Of relevance here is ORS 314.712(2), which provides:

> "If a partner engages in a transaction with a partnership other than in the partner's capacity as a member of the partnership, the transaction shall be treated in the manner described in section 707 of the Internal Revenue Code."

██ Due to the geographical limits on the state's jurisdiction to tax, there are provisions in the state law that are not

---

[1] All references to the Oregon Revised Statutes are to 1991.

found in the federal income tax law. Oregon may impose its income tax only upon income "derived from or connected with sources in this state." ORS 316.124(1). Income which is attributable to sources both within and without the state must be apportioned. *See* ORS 316.117.

"In determining the sources of a nonresident partner's income, no effect shall be given to a provision in the partnership agreement which:

"(a) Characterizes payments to the partner as being for services or for the use of capital * * *." ORS 316.124(2).

In *Pratt & Larsen Tile v. Dept. of Rev.*, 13 OTR 270 (1995), this court held that a guaranteed payment to a nonresident partner is, by ORS 316.124(2), deemed part of the partner's distributive share of partnership income. This follows from the statute directing that the characterization of a payment by a partnership agreement must be ignored in determining the source of the income.

In this case, if the payment in question (*i.e.*, $87,500) was made to taxpayer in his capacity as a partner, then it is deemed part of his distributive share of partnership income. If it was not made to taxpayer in his capacity as a partner, then it is simply income earned by taxpayer while a resident of Washington and is not taxable by Oregon.

For the reasons set forth below, the court finds that the payment was made to taxpayer in his capacity as a partner. Taxpayer was a partner during the time he rendered the services, and the separate Withdrawal Agreement expressly states that it is governed by the Articles of Partnership.[2]

Article XII(A) of the Articles of Partnership governs the withdrawal of a partner. It specifies that the effective date shall be established by the Executive Committee based on the time necessary for an orderly transition of work and client contact. The provision contemplates that, while still a partner, the individual will participate in and assist the partnership in its transition efforts. Nothing in the Withdrawal

---

[2] The Articles of Partnership impose certain duties on the Executive Committee in connection with a withdrawing partner. Apparently, those duties were delegated to the managing partner as authorized under Article VII(A)(10) of the partnership agreement.

Agreement or the Articles of Partnership indicate that taxpayer was not acting as a partner when he rendered the services in question.

The payment of $87,500 includes, if it does not constitute, the payment of taxpayer's share of the partnership profits. Article XII(C) of the partnership agreement sets forth the payments that will be made in the event of a partner's withdrawal. It provides that the amount of the partner's capital account should be paid in two installments and:

> "A sum equal to the withdrawn partner's share at the time of the withdrawal date in the collected and accumulated but undistributed profits of the Partnership."

Thus, under the partnership agreement, taxpayer was entitled to receive his share of the partnership profits up to the date of his withdrawal. Consistent with this, the separate Withdrawal Agreement specifically states: "For 1992, Olejko shall be compensated in the amount of $87,500, all of which shall be paid by March 17, 1992." In context, the statement is referring to taxpayer's share of partnership earnings. There is nothing in either the partnership agreement or the Withdrawal Agreement to indicate that the amount specified is not taxpayer's share of the partnership income.

Taxpayer argues that $87,500 is so much greater than his share of profits for the prior year (*i.e.*, 250 percent more proportionately) that it is evident the payment was not for his services as a partner. However, there is nothing to indicate whether, as of March 17, 1992, partnership profits were greater or less than the prior year. The amount of the payment says nothing about its character.

Even if taxpayer's analysis is correct, it is not reasonable. Taxpayer argues that if his share of partnership income for 1991 was $137,000, it is unreasonable to believe his share of partnership income for a small part of 1992 was $87,500. However, it is more unreasonable to believe that the partnership would pay taxpayer $87,500 as a nonpartner for services for an even smaller part of 1992.[3] This is particularly

---

[3] Taxpayer assumes that he rendered transitional services to the partnership from the time of his announcement of withdrawal in February until his last day, March 17, 1992. However, by the date of the documents, the only period expressly

so because the services were essentially required under the partnership agreement.

The real question is whether the Withdrawal Agreement is inconsistent with the provisions of the Articles of Partnership. The court finds the agreements are consistent.

The affidavit of the managing partner, submitted by taxpayer, states that taxpayer was never assigned a "percentage interest" in the partnership for 1992 and, therefore, received no payments under the partnership agreement. The affidavit also indicates that the negotiated Withdrawal Agreement was not part of the partnership agreement. However, the Withdrawal Agreement specifically states that it was governed by the partnership agreement. Also, the language and context of the Withdrawal Agreement suggest that the $87,500 represented taxpayers's share of the partnership's profits for 1992.

Article XII of the partnership agreement sets forth the obligations of the withdrawing partner with regard to identifying clients and files, billing for services, and allocating payments for contingent fee cases. Services performed under these provisions are transition services. Moreover, they are obligations and actions required to be performed by a partner, not an employee or outside person. There is nothing in the taxpayer's affidavit to indicate that the services he performed were anything different from or more than those required by the partnership agreement.

In summary, under the partnership agreement, which governed the conditions of taxpayer's withdrawal, taxpayer was entitled to receive a share of the partnership's profits. The Withdrawal Agreement specifies clearly that taxpayer is paid $87,500 "for 1992." The Withdrawal Agreement does not indicate taxpayer was acting in any capacity other than as a partner nor does it specify any services

---

covered by the agreement for transition was from March 12 to March 17, a period of five days.

beyond those required by the partnership agreement. Accordingly, the court concludes that the payment of $87,500 to taxpayer was in his capacity as a partner and, therefore, a portion of it is taxable by Oregon. The Department's Opinion and Order 95-0534 must be sustained. Now, therefore,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is denied, and

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is granted. Costs to neither party.